IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

────────────────────────────────────────────────────

FRANK W. LING, M.D., et al.,            )
                                        )
      Plaintiffs,                       )
                                        )
v.                                      )
                                        )      No. 04-2484 Ma/P
HENRY G. HERROD, M.D., et al.,          )
                                        )
      Defendants.                       )
                                        )

────────────────────────────────────────────────────

ORDER GRANTING IN PART AND DENYING IN PART PENDING MOTIONS FOR
SUMMARY JUDGMENT

────────────────────────────────────────────────────

Before the court are two motions for summary judgment. On December 6, 2005, Plaintiffs Frank W. Ling, M.D. ("Ling"), Robert L. Summitt, M.D. ("Summitt"), and Val Y. Vogt, M.D. ("Vogt") filed a motion for partial summary judgment. Defendants Henry G. Herrod, M.D. ("Herrod"), individually and in his capacity as Dean of the College of Medicine at University of Tennessee Health Science Center ("UTHSC"); Owen Phillips, M.D. ("Phillips"), in his capacity as Chair of the Department of Obstetrics and Gynecology; and William Rice ("Rice"), individually and in his capacity as Chancellor of UTHSC, filed a response on January 17, 2006.  Defendants filed a motion for summary judgment on December 15, 2005.  Plaintiffs filed a response on January 24, 2006.  Each side filed reply briefs on February 9, 2006. For the following

1

reasons, both motions are GRANTED in part and DENIED in part.

## I. Background

There is no dispute about the material facts in this case. Plaintiffs were all tenured faculty members in the Department of Obstetrics and Gynecology at UTHSC. (1st Am. Compl. ¶¶ 9-11.[1]) On or about February 18, 2004, Herrod informed Ling that he was terminated, effective March 15, 2004. (Id. ¶ 19, Ex. D.) On March 8, 2004, Herrod informed Summitt and Vogt that they were terminated, effective March 15, 2004. (Id. ¶¶ 20-21, Exs. E-F.) Before they were terminated, each Plaintiff had resigned from the University of Tennessee Medical Group ("UTMG"), effective March 15, 2004. (Ling Dep. Ex. 4, Sept. 9, 2005; Summitt Dep. Ex. 4, Sept. 19, 2005; Vogt Dep. Ex. 11, Sept. 19, 2005.) UTHSC and UTMG had entered into an Affiliation Agreement ("the Agreement") on July 1, 1999, that requires that geographical full-time faculty members of UTHSC practice through UTMG "as a condition of their faculty employment." (Herrod Dep. Ex. 26 ¶ 2(a), Mar. 28, 2005.) Plaintiffs were all geographical full-time faculty members. (Defs.' Mem. Supp. Summ. J. 3 SUMF ¶ 12.) They were not, however, parties to the Agreement, and both Ling and Summitt were tenured before UTHSC entered into the Agreement. (Palazzolo Dep. Exs. 4-5, Feb. 11, 2005.)

---

[1] Plaintiffs filed an amendment to complaint on March 21, 2005, amending only paragraph 8 of their first amended complaint.

Plaintiffs assert that they were not terminated for any of the reasons listed in the UTHSC Faculty Handbook ("the Handbook") and that the procedures set out in the Handbook for terminating a tenured faculty member were not followed. (Id. ¶¶ 19-21.) Therefore, Plaintiffs have brought this action under 42 U.S.C. § 1983, alleging that Defendants violated their Fourteenth Amendment right to procedural due process by depriving them of their property interests in their tenured faculty positions at a state university without due process.

## II. Jurisdiction

The court has jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331.

## III. Standard for Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

**IV. Analysis**

    **A. Defendants' Motion for Summary Judgment**

        **1. Individual Capacity Suit Against Rice**

Although Rice was named in his official capacity in

4

Plaintiff's original complaint, he was not added as a defendant
in his individual capacity until Plaintiffs filed their second
amended complaint on March 21, 2005. The original complaint and
the first amended complaint both stated, "Defendant Rice is sued
in his official capacity only." (Compl. ¶ 8, 1st Am. Compl. ¶ 8.)
The latest possible date from which the statute of limitations in
this case could have started to run is March 15, 2004, the
effective date of Plaintiffs' terminations. "In all actions
brought under § 1983 alleging a violation of civil rights..., the
state statute of limitations governing actions for personal
injuries is to be applied." Berndt v. Tennessee, 796 F.2d 879,
883 (6th Cir. 1986). In Tennessee, the statute of limitations for
personal injury and federal civil rights actions is one year.
Tenn. Code Ann. § 28-3-104. Because the statute of limitations
had expired by March 21, 2005, the court must decide whether
Plaintiffs' second amended complaint relates back to the date of
the original pleading.

Under Fed. R. Civ. P. 15(c)(3), an amendment changing a
party or the name of a party relates back to the date of the
original pleading when the claim against the party arose out of
the same conduct, transaction, or occurrence as the claims
brought in the original pleading; the party received notice of
the action within the period for service and summons of the
complaint set forth in Rule 4(m); and the party "knew or should
have known that, but for a mistake concerning the identity of the

proper party, the action would have been brought against the party."  Adequate notice requires not only "general knowledge of the lawsuit," but also notice of the capacity in which the party is being sued. <u>Lovelace v. O'Hara</u>, 985 F.2d 847, 850 (6th Cir. 1993).

Although Plaintiffs assert that <u>Brown v. Shaner</u>, 172 F.3d 927 (6th Cir. 1999), supports their position that the second amended complaint relates back to the date of the original pleading, the original complaint in that case did not make clear the capacity in which the defendants were being sued. In fact, "it was clear from a reading of the complaint that the[] defendants could not be held liable in their official capacity." <u>Id.</u> at 933. Given that the original and first amended complaints in this case stated clearly that Rice was being sued in his official capacity only, Rice had no reason to know that he might face liability individually until the second amended complaint had been filed, after the applicable statute of limitations had expired and well after the 120-day period set forth in Rule 4(m) for service and summons of the original complaint. Therefore, Defendants' motion for summary judgment as to Rice in his individual capacity is granted, and Plaintiffs' motion for partial summary judgment as to Rice in his individual capacity is denied.

### 2. State Post-Deprivation Remedies

In their motion for summary judgment, Defendants contend

that no constitutional violation occurred because Plaintiffs had
a meaningful state post-deprivation remedy available, but chose
not to use it. Defendants assert that, if Plaintiffs had been
terminated rather than having resigned their positions, Herrod's
action in terminating Plaintiffs without providing a pre-
termination hearing would have been random and unauthorized.
Because Herrod's action could not have been anticipated,
Defendants argue, the existence of post-deprivation state
remedies is sufficient to satisfy the requirements of due
process.

The Supreme Court has held that "when deprivations of
property are effected through random and unauthorized conduct of
a state employee, predeprivation procedures are simply
'impracticable' since the state cannot know when such
deprivations will occur." Hudson v. Palmer, 468 U.S. 517, 533
(1984). When a deprivation of property occurs as a result of
established state procedure, however, post-deprivation remedies
are not sufficient to satisfy the requirements of due process.
Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982).

In Hudson, the unauthorized conduct at issue was the
intentional destruction of an inmate's property by a prison
employee, and in its predecessor, Parratt v. Taylor, 451 U.S. 527
(1981), an inmate was deprived of his property because of the
negligence of prison officials who did not follow the normal
procedure for receipt of inmate packages. Both deprivations took
place instantaneously and unpredictably. As the Supreme Court

7

noted in a later case discussing Parratt, "[t]he very nature of a negligent loss of property made it impossible for the State to predict such deprivations and provide predeprivation process." Zinermon v. Burch, 494 U.S. 113, 129 (1990).

In Zinermon, the Court allowed a plaintiff's procedural due process claim to proceed despite its finding that the deprivation did not occur because of established state procedure. In that case, employees of a state mental hospital allegedly deprived the plaintiff of his liberty by failing to adhere to the state process for involuntary placement and instead admitting him as a voluntary patient despite his claim that he was not competent to consent. The Court found that the employees' actions were not "unauthorized," as the term was used in Parratt and Hudson, because "[t]he State delegated to them the power and authority to effect the very deprivation complained of...and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against [that deprivation]." Id. at 138. "The deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a 'depriv[ation] of constitutional rights...by an official's abuse of his position.'" Id. (quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)). "Zinermon thus counsels that a court look to the nature of the deprivation complained of and the circumstances under which the deprivation occurred to determine whether the rule of Parratt and Hudson applies to defeat a procedural due process claim." Mertik v. Blalock, 983 F.2d 1353, 1366 (6th Cir.

1993).

In this case, the evidence establishes that treating resignations from UTMG as resignations from UTHSC was the established procedure at UTHSC. The Agreement provides that employment with UTMG is a condition of employment for UTHSC's geographic full-time faculty members. (Herrod Dep. Ex. 26 ¶ 2(a).) Although the Agreement does not explicitly state that resigning from UTMG would be equivalent to resigning from UTHSC, Ling, in his previous position as department chair, had been instructed to inform other professors that a resignation from UTMG would be treated as a  resignation from UTHSC. (Ling Dep. 53:1-11.) There is also evidence of an on-going dialogue between attorneys for Plaintiffs and attorneys for UTHSC before and after the termination letters were sent about whether resignation from UTMG constituted resignation from UTHSC. (Herrod Dep. Ex. 28; Rice Dep. Exs. 51-52, July 12, 2005.) This evidence is not met by Defendants' assertion that Herrod, in sending the letters, was acting in a random and unauthorized manner or their assertion that Plaintiffs' termination was not pursuant to an established policy and procedure of UTHSC.

The nature of the deprivation, the termination of a tenured state employee, is not the type of action that can be accomplished in a random and unauthorized manner.  By virtue of his position at UTHSC, the state delegated the power and

authority to Herrod that allowed him to terminate Plaintiffs and the concomitant duty to provide the procedural safeguards established by the state for terminating tenured employees.

Ling received Herrod's letter informing Ling that he was terminated almost a month before the effective termination date, and Summitt and Vogt received their termination letters one week before the effective termination date. These were not instantaneous and unpredictable deprivations. Because Plaintiffs' terminations were not effective immediately and because it is undisputed that other responsible state actors were aware that the letters had been sent, the state could have provided Plaintiffs with process before March 15, 2004, when Plaintiffs were actually deprived of their tenured positions.

The alleged deprivation of property without due process was not the result of a random and unauthorized action such that it would have been impracticable for the state to provide any pre-deprivation process, and Defendants' motion for summary judgment is denied.

### B. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs assert that they are entitled to partial summary judgment because there is no genuine issue of material fact about whether Defendants violated Plaintiffs' right not to be deprived of their property without due process under color of law. Defendants terminated Plaintiffs from their tenured positions

without a pre-termination hearing. A tenured professor at a public university has a constitutionally-protected interest in his continued employment. Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972) (citing Slochower v. Bd. of Educ., 350 U.S. 551 (1956)). It is undisputed that Plaintiffs were tenured and, therefore, had a property interest in their positions at UTHSC.

There is no evidence that Plaintiffs actually resigned from UTHSC as well as from UTMG, and Defendants do not contend that they did. The evidence shows that at least two of the Defendants, Ling and Summitt, expressly stated in their letters of resignation from UTMG that they did not intend to resign from UTHSC. (Ling Dep. Ex. 4; Summitt Dep. Ex. 4.) Defendants argue, however, that Plaintiffs were not entitled to any process because their resignations from UTMG acted as constructive resignations from their full-time tenured positions at UTHSC based on the provisions of the Agreement requiring that geographical full-time faculty members practice through UTMG.

Defendants cite Seventh Circuit precedent holding that an employee constructively resigns when she "engag[es] in conduct inconsistent with her continuing in the job." Bean v. Wis. Bell, Inc., 366 F.3d 451, 455 (7th Cir. 2004). Defendants also cite a decision of the Sixth Circuit, Hammon v. DHL Airways, Inc., 165 F.3d 441 (6th Cir. 1999), which discusses the doctrine of constructive resignation under Ohio law.

"There is no federal general common law." <u>Erie R.R. Co. v.</u>
<u>Tompkins</u>, 304 U.S. 64, 78 (1938).  Therefore, because the
doctrine of constructive resignation is created by the common law
and because there is no federal or state statute governing this
issue, the court must look to state common law. The claims in
this case arise out of Plaintiffs' contention that their
constitutional rights as tenured employees of the state of
Tennessee were violated under color of law by Defendants, who
were also employees of the state of Tennessee. Therefore, the
relevant state common law is that of Tennessee.

There are no decisions from federal or state courts
indicating that the doctrine of constructive resignation, as
defined in <u>Bean</u>, is recognized in Tennessee.  The only published
case originating in a Tennessee court to mention the term
"constructive resignation" is <u>Howard v. Bd. of Educ.</u>, 70 Fed.
Appx. 272, 276 (6th Cir. 2003). That case does not discuss
constructive resignation, but includes the term in its listing of
the sequence of events giving rise to the case, stating that the
plaintiff received a letter threatening her with termination or
constructive resignation if she did not return to her teaching
position when her medical leave ended. This brief mention of
constructive resignation, as part of a threat in an employer's
letter, does not indicate that the doctrine is recognized in
Tennessee. Even if it did, it would only show that, in Tennessee,

12

an employee who abandons his employment is deemed to have constructively resigned.

As to Defendants' claim that an employee who engages in conduct inconsistent with continuing in his job has constructively resigned, the case law from Tennessee courts shows that such conduct only provides grounds for termination for cause. The Tennessee Court of Appeals has found that "an employee has been terminated for cause if the employee's termination stems from a job-related ground. A job-related ground includes any act that is inconsistent with the continued existence of the employer-employee relationship." Lawrence v. Rawlins, 2001 WL 76266, at *5 (Tenn. Ct. App. Jan. 30, 2001) (internal citations omitted)(defining termination for cause under Tennessee law in a case arising from the termination of non-tenured employees of Tennessee educational institutions); see also Bolen v. Signage Solutions, LLC, 2005 WL 166956, at *7 (Tenn. Ct. App. Jan. 26, 2005) (reaffirming Lawrence's definition of termination for cause in case arising from termination by private employer); Biggs v. Reinsman Equestrian Prods., Inc., 169 S.W.3d 218, 221-22 (Tenn. Ct. App. 2004) (same). Therefore, as a matter of law, the doctrine of constructive resignation, as defined by the Seventh Circuit, does not exist under the common law of Tennessee and would be inapplicable to this case if it did.

Because Plaintiffs did not resign their positions, they were

13

terminated. As tenured faculty members with a constitutionally-
protected property interest in their continued employment,
Plaintiffs were entitled to "some kind of a hearing" before being
terminated. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532,
542 (1985). "'[T]he root requirement' of the Due Process Clause
[is] 'that an individual be given an opportunity for a hearing
*before* he is deprived of any significant property interest.'" <u>Id.</u>
(quoting <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379 (1971))
(emphasis in original). Plaintiffs here were given no hearing.

Furthermore, the letters sent to Plaintiffs did not meet the
Handbook's requirements for letters initiating termination
proceedings for adequate cause. To initiate termination
procedures, the Chancellor is required to send a letter to the
faculty member stating the reasons for termination and informing
him that he has ten days after receipt of the letter to elect in
writing to contest the termination. (Palazzolo Dep. Ex. 2 ¶¶
7.3.1(2), 7.3.2(2).) Plaintiffs were given neither notice that
they could contest their termination nor the opportunity to do
so.

Defendants violated Plaintiffs' constitutional right not to
be deprived of their property without due process. Because
Defendants acted under their authority as employees of the state
of Tennessee, the deprivation of constitutional rights was under
color of state law. Therefore, Plaintiffs' motion for partial
summary judgment is granted as to all Defendants in their

official capacities.

**C. Qualified Immunity**

Herrod has asserted the defense of qualified immunity. Unless there is a dispute about whether a defendant committed certain acts, qualified immunity is a question of law to be decided by the court. <u>McLaurin v. Morton</u>, 48 F.3d 944, 947 (6th Cir. 1995).  In this case, it is undisputed that Herrod wrote and sent the letters terminating Plaintiffs from their tenured faculty positions.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  It is undisputed that the right to receive notice and an opportunity to respond before being terminated from a tenured faculty position at a state university was clearly established when Herrod sent letters to Plaintiffs terminating them.

Herrod contends, however, that he is entitled to qualified immunity because a reasonable official would not have understood that sending the letters violated Plaintiffs' procedural due process rights. The Supreme Court has held that, in addition to the general finding that the right is clearly established under constitutional or statutory law, "[t]he contours of the right must be sufficiently clear that a reasonable official would

15

understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 438 U.S. 635, 640 (1987). Specifically, Herrod argues that a reasonable official could have believed that Defendants had resigned their positions at UTHSC by resigning from UTMG. Given the provisions of the Agreement and the absence of clear Tennessee authority about constructive resignation, a reasonable official could have concluded that Plaintiffs constructively resigned their tenured positions when they resigned from UTMG.

Therefore, the court finds that a reasonable official in Herrod's position would not necessarily have understood that his actions violated Plaintiffs' clearly established constitutional rights, and Plaintiffs' motion for partial summary judgment as to Herrod in his individual capacity is denied.

**V. Conclusion**

Defendants' motion for summary judgment is GRANTED as to Rice in his individual capacity and DENIED as to all other Defendants.

Plaintiffs' motion for partial summary judgment is GRANTED as to all Defendants in their official capacities and DENIED as to Rice and Herrod in their individual capacities.

So ordered this 3rd day of August 2006.

s/Samuel H. Mays, Jr.

SAMUEL H. MAYS, JR.

UNITED STATES DISTRICT JUDGE

17